IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 3 1 2002

Michael N. Milby
Clerk of Court

|  |  |
|---|---|
| NOVA/LINK AND SERVICIOS INDUSTRIALES NOVA LINK, S.A. de C.V., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| INDIANA KNITWEAR CORPORATION, | ) ) ) |
| Defendant. | ) ) ) |

CIVIL ACTION
NO. **B-02-148**

Removed from the 404th
Judicial District of
Cameron County, Texas

## DEFENDANT'S NOTICE OF REMOVAL

TO THE HONORABLE COURT:

This Notice of defendant, Indiana Knitwear Corporation ("IKC"), respectfully shows the following:

### Background

1.      IKC is the defendant in a civil action brought in the 404th Judicial District Court of Cameron County, Texas, styled *Nova/Link and Servicios Industriales Nova Link, S.A. de C.V. v. Indiana Knitwear Corporation*, Cause No. 2002-04-1648G. Although it appears that plaintiffs Nova/Link and Servicios Industriales Nova Link, S.A. de C.V. (collectively, "Nova/Link") filed the original petition (the "Petition") on or about April 22, 2002, IKC has not been served with citation, and, therefore has not filed answers and/or special appearances in the state court action.

2.      IKC learned of the Petition on or about July 16, 2002, when counsel to IKC received a copy of the Petition attached to a Motion to a Dismiss or Stay filed by Nova/Link's attorneys in a related civil action pending in the United States District Court for the Southern District of Texas, Houston Division, styled *Indiana Knitwear Corporation v. Nova Link S.A. de*

*C.V.*, Cause No. H-02-2159 (the "Related Federal Action"). *See* **Exhibit A** (a true copy of the Petition).

3.    The Related Federal Action arises from the same facts and circumstances as does the Petition. IKC filed the Related Federal Action on or about June 7, 2002, and Judge Lake has issued an Order for Conference and the Case Management Order in that case. *See* **Exhibit B,** a true copy of the Related Federal Action.

### Plaintiffs' Causes of Action

4.    Nova/Link's action is civil in nature. It claims damages allegedly sustained as a result of IKC's alleged breach of contract for failure to reimburse Nova/Link for certain severance payments. The Petition seeks actual damages, pre- and post-judgment interest, attorneys' fees, and costs. *See* Petition at 5.

### Subject Matter Jurisdiction

5.    The above-described matter is an action of which this Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, in that (i) it is a civil action between citizens of different states, as more fully appears herein and in the Petition; and (ii) as reflected in the Civil Action Cover Sheet and the Related Federal Action, the amount in controversy exceeds $75,000.

6.    Upon information and belief, based on the allegations of the Petition, plaintiff, Nova/Link, was at the time this action was commenced, and still is, a Cayman Islands limited partnership with a place of business in Cameron County, Texas.

7.    Upon information and belief, based on the allegations of the Petition, plaintiff, Servicios Industriales Nova Link, S.A. de C.V., was at the time this action was commenced, and still is, a Mexican corporation with a place of business in Cameron County, Texas.

8.    IKC is an Indiana corporation with a principal place of business at 230 East Osage Street, Greenfield, Indiana.

## Removal

9.     The above-described action is removable under 28 U.S.C. § 1441, as the United States District Court for the Southern District of Texas has diversity jurisdiction over the action and the Brownsville Division embraces the place where the action is pending.

10.     This Notice is timely under 28 U.S.C. § 1446(b), as IKC has not been served with citation and first received a copy of the Petition on or after July 16, 2002.

11.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders received by IKC are attached hereto.

12.     Pursuant to 28 U.S.C. § 1446(d), copies of this Notice and IKC's Written Notice of Notice of Removal are being served on counsel to Nova/Link and filed in the 404th Judicial District Court of Texas on this date.

## Local Rules

13.     Pursuant to Local Rule 81, attached to this Notice of Removal are such of the following documents as are in existence:

[1]     All executed process in the case (none);
[2]     Copies of all pleadings asserting causes of action (attached as **Exhibit A**);
[3]     Copies of Related Federal Action (attached as **Exhibit B**);
[4]     All orders signed by the state judge (none);
[5]     The state court docket sheet (attached as **Exhibit C**);
[6]     An index of the matters being filed (attached as **Exhibit D**); and
[7]     A list of all counsel of record (attached as **Exhibit E**).

## Prayer

Defendant Indiana Knitwear Corporation requests that this case be removed to the United States District Court for the Southern District of Texas, Brownsville Division.

-3-

Respectfully submitted,

_Jack E. Urquhart / by_

Jack E. Urquhart    *Pamela Hicks*
State Bar No. 20415600
Fed. I.D. No. 2082
1300 Post Oak Blvd., 24th Floor
Houston, Texas  77056
(713) 623-0887 - Telephone
(713) 960-1527 – Facsimile

**ATTORNEY IN CHARGE FOR
INDIANA KNITWEAR CORPORATION**

**OF COUNSEL:**
BEIRNE, MAYNARD & PARSONS, L.L.P.
Martin D. Beirne
State Bar No. 02055000
Fed. I.D. No. 3120
Pamela C. Hicks
State Bar No. 24007002
Fed I.D. No.23061
1300 Post Oak Blvd., 24th Floor
Houston, Texas  77056
(713) 623-0887 – Telephone
(713) 960-1527 - Facsimile

William N. Berkowitz
Rheba Rutkowski
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

## CERTIFICATE OF SERVICE

I certify that a copy of the above pleading was served on all counsel of record via Federal Express on July 20th, 2002, as follows:

Samuel S. Griffen, III
Griffen & Matthews
1155 Dairy Ashford, Suite 300
Houston, Texas 77079

*Pamela Hicks*
Pamela C. Hicks

-4-

LITDOCS:462835.1

CAUSE NO. 2002-04-1648-G.

| | | |
|---|---|---|
| NOVA/LINK AND SERVICIOS INDUSTRIALES NOVA LINK, S.A. DE C.V | § § § § | IN THE DISTRICT COURT OF |
| | | CAMERON COUNTY, TEXAS |
| V. | § § | |
| INDIANA KNITWEAR CORPORATION | § § | 404th JUDICIAL DISTRICT |

FILED _____ O'CLOCK ____ M
AURORA DE LA GARZA DIST. CLERK
APR 22 2002
DISTRICT COURT OF CAMERON COUNTY, TEXAS
BY: CORNEJO
DEPUTY

### PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE COURT:

NOVA/LINK AND SERVICIOS INDUSTRIALES NOVA LINK S.A. DE C.V,

Plaintiffs, complain of INDIANA KNITWEAR CORPORATION, and for cause of action

shows:

### I.

### DISCOVERY PLAN

The discovery in this case shall be conducted under Discovery Control Plan Level

Two (2).

### II.

### PARTIES, JURISDICTION AND VENUE

Plaintiff, NOVA/LINK, is a registered Cayman Islands limited partnership which

maintains a distribution center in Cameron County, Texas.

Plaintiff, SERVICIOS INDUSTRIALES NOVA LINK S.A. DE C.V, is a mercantile

corporation duly formed and existing under the laws of the country of Mexico, and maintains

an office in Cameron County, Texas.

EXHIBIT
A

Defendant, INDIANA KNITWEAR CORPORATION ("INDIANA KNITWEAR"), is a foreign company organized under the laws of the state of Indiana. Defendant, at all times material to this action, has engaged in business in Texas, as more particularly described below. Defendant may be cited by serving its registered agent, Robert Taylor, 2 ½ Miles North Highway 77, Lyford, Texas 78569.

This court has jurisdiction of this lawsuit pursuant to §24.007 of the Texas Government Code.

Plaintiffs and Defendant entered into a contract which was to be performed, in whole or in part, in Cameron County, Texas. Plaintiffs' claims and causes of action relate to or arise out of Defendant's breach of that contract in Cameron County, Texas.

## III.

## FACTUAL BACKGROUND

In July of 1998, Plaintiffs and Defendant entered into a business relationship. Plaintiffs agreed to assemble and package certain products in accordance with Defendant's specifications. The original arrangement was under a purchase order system. Defendant agreed to pay Plaintiffs for their services in an amount which was dependent on the specific product that was assembled and packaged.

The business relationship began to grow through 1999 and Plaintiffs' commitment to Defendant became very large. This increased business required Plaintiffs to dedicate operators to manufacture Defendant's goods. During 1999, the parties began negotiating a

2

contractual agreement that would govern the relationship between the parties. As part of the contract, Plaintiffs required Defendant to reimburse them for severance payments to the operators mandated under Mexican law if the operators are laid off as a result of Defendant's termination of the contract. Revisions to the contract were sent back and forth, but a final agreement was never signed because Defendant was experiencing a down turn in sales. Defendant never disputed its obligation to reimburse Plaintiffs for the severance payment.

In the year 2000, Defendant's orders from Plaintiffs increased requiring Plaintiffs to expand their operation to produce a wider variety of styles. Additional operators were dedicated to Defendant's product lines. On November 21, 2000, Defendant again informed Plaintiffs of a downturn in business and provided 60 days notice of termination of their relationship. Plaintiffs began assisting Defendant on how to keep their lines running, and an agreement was reached to maintain the lines until January 2001.

During 2001, the operation continued running and the contractual negotiations resumed. In late 2001, Defendant informed Plaintiffs that it would not have enough production to maintain the lines. By November 2001, Defendant terminated its relationship with Plaintiffs. As a result of Defendant's termination, Plaintiffs were required to lay off the operators dedicated to Defendant's product lines and pay them severance as mandated by Mexican law.

3

# IV.

## BREACH OF CONTRACT

Pursuant to the terms and conditions of its contract, Defendant was obligated to reimburse Plaintiffs for any severance payments made to their operators as a result of Defendant's termination of the agreement. Defendant has failed to perform its obligations and, thus, has breached the contract. Accordingly, Defendant is liable to Plaintiffs for the damages arising out of Defendant's breach of the contract. Plaintiffs have made demand upon Defendant for payment of the damages caused by Defendant's breach. However, Defendant has failed and refused and continues to refuse to reimburse Plaintiffs for the breach of the contract.

Plaintiffs have performed all conditions precedent to the contract.

Defendant's acts and omissions are a breach of the contract which have caused actual damages in excess of the minimum jurisdictional limits of this Court.

# V.

## DAMAGES

As a direct result of the wrongful actions of Defendant, Plaintiffs were required to pay severance pay to its employees in the amount with in the jurisdictional limits of this Court. Plaintiffs have incurred other expenses as a result of Defendant's breach, such as dismantling costs.

4

## VI.

## ATTORNEY'S FEES

Plaintiffs have made numerous demands for payment, including providing proper notice of their intent to file a claim. However, Defendant has failed and continued to fail to tender the demanded payment. As a result of Defendant's conduct, Plaintiffs were forced to employ the services of the undersigned law firm. Plaintiffs are therefore entitled to recover an additional sum as compensation for the legal services provided in connection with the preparation and prosecution of this action pursuant to Tex. Civ. Prac. & Rem.Code § 38.001.

## VII.

## PRAYER

WHEREFORE, Plaintiffs requests that Defendant be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1. Judgment for economic damages in the amount within the jurisdictional limits of this Court;

2. Prejudgment interest as allowed by law;

3. Reasonable and necessary attorney's fees;

4. Postjudgment interest as allowed by law;

5. Costs of suit; and

6. Such other and further relief to which Plaintiffs may be justly entitled.

5

Respectfully submitted,

GRIFFIN & MATTHEWS

By:_____

SAMUEL S. GRIFFIN, III
State Bar No. 08473800
W. MICHAEL TAYLOR
State Bar. No 00789675
1155 Dairy Ashford, Suite 300
Houston, Texas 77079
(281) 870-1124
(281) 870-1647 (facsimile)

ATTORNEYS    FOR    PLAINTIFFS,
NOVA/LINK    AND    METODOS
COMPETITIVOS   DE   MATAMOROS
S.A.DE C.V.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



United States Courts
Southern ___ t of Texas
FILED

JUN 0 5 2002

Michael N. Milby, Clerk

| | |
|---|---|
| INDIANA KNITWEAR CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NOVA/LINK S.A. de C.V., | ) |
| | ) |
| Defendant. | ) |
| | ) |

H-02-2159

CIVIL ACTION
NO.

## COMPLAINT AND JURY DEMAND

This is a diversity action for damages in connection with the defendant's conversion of
over $100,000 worth of equipment owned by plaintiff, which plaintiff provided to the defendant
solely for use in the manufacture of plaintiff's products. Although the defendant no longer
manufactures plaintiff's products, and despite the fact that plaintiff indisputably owns and has
the right to possess the equipment, the defendant now holds plaintiff's equipment hostage,
intentionally and wrongfully dispossessing plaintiff of the equipment; converting plaintiff's
equipment to its own use; impairing the condition and value of plaintiff's equipment; and
refusing to relinquish control of plaintiff's equipment unless plaintiff pays a ransom.

### The Parties

1.    Plaintiff Indiana Knitwear Corporation ("IKC"), is an Indiana corporation with a
principal place of business at 230 East Osage Street, Greenfield, Indiana. IKC conducts business
in Texas regularly through its division known as Willacy Apparel Company in Lyford, Texas.

2.    Upon information and belief, defendant Nova/Link S.A. de C.V. ("Nova/Link"),
is a partnership under the laws of the Cayman Islands. Nova/Link has a place of business at



EXHIBIT
B

Avenida Del Obrero #3, Fraccionamiento Industrial Del Norte, H. Matamoros, Tamps., Mexico, and conducts business in Texas regularly through its distribution center and manufacturing facilities at 601 South Vermillion Road, Brownsville, Texas, 78521. Upon information and belief, Nova/Link is registered with the Texas Secretary of State as a domestic business corporation, with a principal address at P.O. Box 2318, Brownsville, Texas 78522, and with a registered agent and office at 600 Elca Lane, Suite B, Brownsville, Texas 78520.

### Jurisdiction and Venue

3       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there exists complete diversity of citizenship between the parties and the amount in controversy, exclusive of costs and interest, is well in excess of $75,000.

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a), as Nova/Link has a usual place of business in this judicial district and is subject to personal jurisdiction in this judicial district.

### Facts Common to all Counts

5.      Plaintiff IKC manufactures and sells apparel to retailers and others.

6.      Defendant Nova/Link provides "maquiladora" manufacturing services in Mexico, an arrangement developed with the introduction of the Free Trade Zone established between Mexico and the United States.

7.      In a maquiladora manufacturing relationship, a United States manufacturer provides equipment and raw materials to the maquiladora facility in Mexico, and the maquiladora provides the necessary labor and services required to produce a finished product, which is then shipped back to the United States. In such a relationship, the United States manufacturer does not enter an employment relationship with the laborers whose services are provided by the maquiladora. As advertised by Nova/Link on its website:

-2-

[W]e have perfected the format in which our clients can relocate into Mexico and pay for our services throughout and [*sic*] hourly rate. Under this format the client provides the machinery, raw materials, and expertise necessary to manufacture the product. NOVA/LINK in turn brings all of the aspects of Mexico to the program. We provide the transportation between Brownsville, TX and our Mexican facilities on our private truck fleet, the Mexican brokering services, full management and engineering staff, and all of the legal and permitting functions for the execution of the manufacturing operations.

This format allows us to set up a specially designed production layout to meet our clients' needs. Together we implement the program and effectively train our staff and operators so the production can then be left to NOVA/LINK. It's having your "own" manufacturing division in Mexico.

To complete the service and allow for direct distribution from Brownsville, Texas, we have a full distribution center for services ranging from cross docking to unit pick and pack fulfillment.

8.    In or about July 1998, IKC and Nova/Link agreed to commence operation of a maquiladora sewing line in Mexico. The terms of the parties' agreement ("Agreement") are memorialized in a confirmatory letter from IKC to Nova/Link, a true copy of which is attached hereto as ***Exhibit A***, and included the following:

- Nova/Link's pricing to IKC would include freight to and from Nova/Link's Brownsville, Texas warehouse.
- IKC would provide to Nova/Link, but would retain ownership of, all equipment, fabric and labeling components, thread and packaging material required for the manufacture of IKC's products.
- IKC would pay all United States customs service fees and the cost of temporary warehousing in Nova/Link's Brownsville warehouse.
- IKC would "not be responsible for any expenses not listed above without prior authorization."
- Nova/Link would be "responsible for all Mexican requirements."

9.    Following the parties' entry into this Agreement, IKC provided Nova/Link with over $100,000 worth of IKC's own equipment, required for the manufacture of IKC's products, while retaining title to and ownership of the equipment (hereinafter, the "IKC Equipment"). IKC provided the IKC Equipment to Nova/Link solely for use in the manufacture of IKC's products,

-3-

with the reasonable understanding that Nova/Link would (i) use the IKC Equipment solely for the purpose of manufacturing IKC's products; (ii) exercise reasonable care in the custody, use, and maintenance of the IKC Equipment; and (iii) return the IKC Equipment to IKC in good condition upon termination of the Agreement and maquiladora relationship between the parties. Nova/Link accepted the IKC Equipment for this purpose and with the same understanding.

10.    In or about January 1999, IKC and Nova/Link agreed to expand production, which expansion would require two additional sewing lines.  The additional terms of the agreement between the parties were memorialized in a letter dated January 28, 1999.  The additional terms included an agreement that each party would provide the other with 60-days' notice of termination of the Agreement.  The January 28, 1999 letter also reaffirmed that Nova/Link would be "responsible for all Mexican requirements."  A true copy of the January 28, 1999 letter is attached hereto as *Exhibit B*.

11.    On or about September 27, 2001, IKC gave Nova/Link 60-days' notice of IKC's intent to terminate production due to the bankruptcy of IKC's largest customer and a decline in the sales upon which IKC's production requirements with Nova/Link were based.  A true copy of the September 27, 2001 letter is attached hereto as *Exhibit C*.

12.    On or about November 7, 2001, IKC received a communication from Nova/Link, claiming that IKC was responsible for employee "severance pay" in an amount exceeding $160,000.00, notwithstanding that Nova/Link was and is responsible for all Mexican requirements, including labor costs.  A true copy of the November 7, 2001 letter is attached hereto as *Exhibit D*.

13.    Since giving notice of termination of the Agreement, IKC has asked Nova/Link numerous times to return the IKC Equipment.  Nova/Link has admitted that it has possession of

-4-

the IKC Equipment but has wrongfully refused to return the IKC Equipment and wrongfully demanded that IKC make an "indemnity" payment to Nova/Link to cover "severance pay" for Nova/Link's employees.

14.    Under the Agreement and consistent with the maquiladora relationship, Nova/Link was and is responsible for all "Mexican requirements," including labor costs. Nova/Link also was responsible for returning the IKC Equipment to IKC in good condition upon termination of the Agreement and maquiladora relationship between the parties.

15.    No "severance" or "indemnity" payment from IKC to Nova/Link is required or contemplated by the Agreement or any modification thereto; nor is IKC required to pay Nova/Link any money in connection with the return of the IKC Equipment to IKC.

16.    IKC has never agreed to pay any labor costs or to make any "severance" or "indemnity" payment to Nova/Link.  IKC does not otherwise owe Nova/Link any money.

17.    IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time.  IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to retain possession of the IKC Equipment for any reason.  Nova/Link is aware of these facts, yet has refused to return the IKC Equipment to IKC, in reckless disregard of IKC's rights.

18.    Nova/Link has intentionally, wrongfully, and maliciously dispossessed IKC of the IKC Equipment since November 2001, and has acted in reckless disregard of IKC's rights.

19.    Nova/Link has intentionally, wrongfully, and maliciously exercised dominion and control over the IKC Equipment since November 2001 and has acted in reckless disregard of IKC's rights.

-5-

**Count I**
**(Conversion)**

20.     The allegations contained in paragraphs 1-19 are incorporated by reference as though fully set forth herein.

21.     IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time.  IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to retain possession of the IKC Equipment for any reason.  Nova/Link is aware of these facts and has acted in reckless disregard of IKC's rights.

22.     Since the Agreement and maquiladora relationship between the parties has been terminated, Nova/Link has a duty to return the IKC Equipment to IKC, yet Nova/Link has failed and refused to do so.  Instead, Nova/Link has breached its duty to return the IKC Equipment to IKC, intentionally, wrongfully, and maliciously exercising dominion and control over the IKC Equipment since November 2001, and imposing unreasonable and unwarranted conditions on the return of the IKC Equipment, such as demanding money from IKC that IKC does not owe to Nova/Link.

23.     Nova/Link has intentionally, wrongfully, and maliciously exercised dominion and control over the IKC Equipment for the purpose of appropriating the IKC Equipment for itself, in reckless disregard of IKC's rights.

24.     Nova/Link has intentionally, wrongfully, and maliciously exercised dominion and control over the IKC Equipment for the purpose of depriving IKC of the IKC Equipment, in reckless disregard of IKC's rights.

-6-

25.    Nova/Link has intentionally, wrongfully, and maliciously exercised dominion and control over the IKC Equipment for the purpose of extorting money from IKC, in reckless disregard of IKC's rights.

26.    As a result of Nova/Link's conduct in maliciously failing and refusing to return the IKC Equipment in reckless disregard of IKC's rights, as described above, IKC has suffered and will suffer damages in an amount to be proven at trial and is entitled to exemplary damages.

## Count II
### (Trespass to Chattels)

27.    The allegations contained in paragraphs 1-26 are incorporated by reference as though fully set forth herein.

28.    IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time.  IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to retain possession of the IKC Equipment for any reason.  Nova/Link is aware of these facts and has acted in reckless disregard of IKC's rights.

29.    Since the Agreement and maquiladora relationship between the parties has been terminated, Nova/Link has a duty to return the IKC Equipment to IKC, yet Nova/Link has failed and refused to do so.  Instead, Nova/Link has breached its duty to return the IKC Equipment to IKC, intentionally, wrongfully, and maliciously dispossessing IKC of the IKC Equipment, in reckless disregard of IKC's rights.

30    Nova/Link has intentionally, wrongfully, and maliciously deprived IKC of the use and value of the IKC Equipment for a substantial time, in reckless disregard of IKC's rights.

-7-

31.     Upon information and belief, Nova/Link has intentionally, wrongfully, and maliciously impaired the condition, quality, or value of the IKC Equipment, in reckless disregard of IKC's rights.

32.     As a result of Nova/Link's conduct in intentionally, wrongfully, and maliciously dispossessing IKC of the IKC Equipment in reckless disregard of IKC's rights, as described above, IKC has suffered and will suffer damages in an amount to be proven at trial and is entitled to exemplary damages.

### Count III
### (Violation of Bailment)

33.     The allegations contained in paragraphs 1-32 are incorporated by reference as though fully set forth herein.

34.     Following the parties' entry into the Agreement, IKC provided Nova/Link with the IKC Equipment while retaining title to and ownership of the IKC Equipment. Pursuant to the Agreement, IKC provided Nova/Link with the IKC Equipment solely for use in the manufacture of IKC's products, with the reasonable understanding that Nova/Link would (i) use the IKC Equipment solely for the purpose of manufacturing IKC's products; (ii) exercise reasonable care in the custody, use, and maintenance of the IKC Equipment; and (iii) return the IKC Equipment to IKC in good condition upon termination of the Agreement and maquiladora relationship between the parties. Nova/Link accepted the IKC Equipment for this purpose and with the same understanding, creating a bailment.

35.     IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time; nor is IKC required by the Agreement to pay Nova/Link any money in connection with the return of the IKC Equipment. IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to

-8-

retain possession of the IKC Equipment for any reason. Nova/Link is aware of these facts and has acted in reckless disregard of IKC's rights.

36.    Since the Agreement and maquiladora relationship between the parties has been terminated, Nova/Link has a duty to return the IKC Equipment to IKC. IKC has directed Nova/Link to return the IKC Equipment on numerous occasions, yet Nova/Link has failed and refused to do so. Instead, Nova/Link has breached its duty to return the IKC Equipment to IKC, intentionally, wrongfully, and maliciously dispossessing IKC of the IKC Equipment and violating its duty under the bailment, in reckless disregard of IKC's rights.

37.    Upon information and belief, Nova/Link has failed to exercise reasonable care in the custody, use, and maintenance of the IKC Equipment and has impaired the condition, quality, or value of the IKC Equipment in violation of its duty under the bailment.

38.    As a result of Nova/Link's conduct in failing and refusing to return the IKC Equipment to IKC and in failing to exercise reasonable care in the custody, use, and maintenance of the IKC Equipment, as described above, IKC has suffered and will suffer damages in an amount to be proven at trial.

### Count IV
### (Breach of Contract)

39.    The allegations contained in paragraphs 1-38 are incorporated by reference as though fully set forth herein.

40.    IKC has fully or substantially performed all of its obligations under the Agreement.

41.    Nova/Link has breached the Agreement by wrongfully and maliciously refusing to return the IKC Equipment to IKC upon termination of the Agreement and by wrongfully and

maliciously demanding payment for costs for which Nova/Link was and is responsible under the Agreement and pursuant to the maquiladora relationship.

42.     As a result of Nova/Link's conduct, as described above, IKC has suffered and will suffer damages in an amount to be proven at trial.

## Count V
### (Restitution/Unjust Enrichment)

43.     The allegations contained in paragraphs 1-42 are incorporated by reference as though fully set forth herein.

44.     IKC provided the IKC Equipment, worth over $100,000, to Nova/Link solely for use by Nova/Link's maquiladora facility in the manufacture of IKC's products.

45.     IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time.  As the Agreement and maquiladora relationship between the parties has been terminated, IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to retain possession of the IKC Equipment for any reason.  Nova/Link is aware of these facts and has acted in reckless disregard of IKC's rights.

46.     Nova/Link has a duty to return the IKC Equipment to IKC, yet Nova/Link has failed and refused to do so, in reckless disregard of IKC's rights.

47.     IKC had a reasonable expectation that Nova/Link would meet its obligation to return the IKC Equipment to IKC upon termination of the Agreement and maquiladora relationship between the parties.

48.     Despite IKC's repeated demands for the return of the IKC Equipment, and despite Nova/Link's knowledge that IKC owns the IKC Equipment and is entitled to immediate

-10-

possession of the IKC Equipment, Nova/Link has failed and refused to return the IKC Equipment to IKC, thereby unjustly enriching itself to the harm and detriment of IKC.

49.    As a result of Nova/Link's conduct, as described above, Nova/Link is liable to IKC in an amount to be proven at trial.

## Count VI
### (Fraud/Misrepresentation)

50.    The allegations contained in paragraphs 1-49 are incorporated by reference as though fully set forth herein.

51.    Nova/Link intentionally and falsely represented to IKC that Nova/Link would assume all responsibility for all "Mexican requirements," including labor costs, and that it would return the IKC Equipment to IKC upon termination of the parties' Agreement and maquiladora relationship.

52.    IKC has never agreed to pay any labor costs ("severance payments" or otherwise) or to make any "indemnity" payment to Nova/Link; nor does the Agreement require IKC to pay Nova/Link any money in connection with the return of the IKC Equipment.  IKC does not otherwise owe Nova/Link any money.

53.    IKC reasonably relied to its detriment on Nova/Link's representations that Nova/Link would assume all responsibility for all "Mexican requirements," including labor costs, and that it would return the IKC Equipment to IKC upon termination of the parties' Agreement and maquiladora relationship.

54.    Nova/Link's representations that Nova/Link would assume all responsibility for all "Mexican requirements," including labor costs, and that it would return the IKC Equipment to IKC upon termination of the parties' Agreement and maquiladora relationship played a

-11-

substantial part in IKC's decision to enter into a maquiladora relationship with Nova/Link on the terms of the Agreement.

55.    As a result of Nova/Link's conduct, as described above, IKC has suffered and will suffer damages in an amount to be proven at trial, and is entitled to punitive damages.

### Count VII
### (Declaratory Judgment)

56.    The allegations contained in paragraphs 1-55 are incorporated by reference as though fully set forth herein.

57.    Under the Agreement and consistent with the maquiladora relationship, Nova/Link was and is responsible for all "Mexican requirements," including labor costs.

58.    No severance or "indemnity" payment from IKC to Nova/Link is required or contemplated by the Agreement or any modification thereto; nor does the Agreement require IKC to pay Nova/Link any money in connection with the return of the IKC Equipment.

59.    IKC has never agreed to pay any labor costs or to make any "severance" or "indemnity" payment to Nova/Link; nor does IKC otherwise owe Nova/Link any money.

60.    IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time. IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to retain possession of the IKC Equipment for any reason. Nova/Link is aware of these facts, yet has refused to return the IKC Equipment to IKC.

61.    Since giving notice of termination of the Agreement, IKC has asked Nova/Link numerous times to return the IKC Equipment. Nova/Link has admitted that it has possession of the IKC Equipment but has wrongfully refused to return the IKC Equipment and wrongfully

-12-

demanded that IKC make an "indemnity" payment to Nova/Link to cover "severance pay" for Nova/Link's employees.

62.    As alleged above, an actual controversy exists between IKC and Nova/Link concerning whether IKC is entitled to immediate possession of the IKC Equipment, without having to pay Nova/Link a ransom for its release, and whether IKC owes Nova/Link money.

63.    Pursuant to awarding plaintiff such other relief as is warranted under 28 U.S.C. § 2201 and applicable state law, IKC is entitled to a declaratory judgment by this Court as to the rights and obligations of the parties in the matter of the controversy.  Specifically, IKC is entitled to a declaratory judgment that IKC is entitled to immediate possession of the IKC Equipment, without having to pay Nova/Link money for its release, and that IKC otherwise does not owe Nova/Link any money.  Plaintiff is also entitled to further relief as may be warranted under 28 U.S.C. § 2202.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS SO TRIABLE.**

-13-

**WHEREFORE**, plaintiff, Indiana Knitware Corporation, prays that the Court

(i)    enter judgment in favor of plaintiff on all counts of the Complaint;

(ii)    enter an order declaring that plaintiff is entitled to immediate possession of the IKC Equipment and that plaintiff owes nothing to defendant, and awarding plaintiff such other relief as is warranted under 28 U.S.C. § 2202;

(iii)    award plaintiff damages in an amount to be proven at trial -- including actual, compensatory, exemplary, and punitive damages -- together with interest, costs and attorneys' fees; and

(iv)    award plaintiff any such further relief that the Court deems just and proper.

Respectfully submitted,

Jack E. Urquhart / by Pamela Hicks
State Bar No. 20415600
Fed. I.D. No. 2082
1300 Post Oak Blvd., 24th Floor
Houston, Texas 77056
(713) 623-0887 - Telephone
(713) 960-1527 – Facsimile

**ATTORNEY IN CHARGE FOR
INDIANA KNITWARE CORPORATION**

OF COUNSEL:
BEIRNE, MAYNARD & PARSONS, L.L.P.
Martin D. Beirne
State Bar No. 02055000
Fed. I.D. No. 3120
Pamela C. Hicks
State Bar No. 24007002
Fed I.D. No.23061
1300 Post Oak Blvd., 24th Floor
Houston, Texas 77056
(713) 623-0887 – Telephone
(713) 960-1527 - Facsimile

-14-

William N. Berkowitz
Rheba Rutkowski
BINGHAM DANA LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

Dated:  June 3, 2002

LITDOCS:452699.2



January 28, 1999

Nova/Link
Ave. Del Obrero #3
Fracc. Ind. Del Norte
H. Matamoros, Tamps
Mexico 87310

Attention:    Mr. Jason Wolfe
              FAX #011-52-88-10-1083

Dear Jason:

We have confirmed your pricing on style P701 at $11.73 per dozen. Your price includes freight to and from Brownsville, all Mexican customs services, sewing and final quality auditing. Nova/Link is responsible for all Mexican requirements.

Per our conversation, we have revised my letter dated 12-9-98 to expand our production in 1999 to 2,500 dozen per week. We confirmed that Nova/Link will comply with our quality control system as required by our accounts.

The following areas need to be clarified as we expand our business relationship:

1.  Indiana Knitwear Corporation and Nova/Link understand that this arrangement will run through September 30, 1999. Naturally, we both want the relationship to continue beyond 9-30-99.

2.  We both agree to give the other party a sixty-day notice of termination of our verbal agreement if business situations warrant.

3.  Indiana Knitwear will furnish one case of silicone spray with each shipment involving screen print sleeves to assist Nova/Link.

4.  Indiana Knitwear will furnish the cleaning equipment and cleaning fluid required to clean our garments.

5.  Nova/Link will be responsible for purchasing all machine parts including needles.

6.  Nova/Link will be responsible for providing the box tape and strapping to properly seal our cartons or unipack containers.

**InDIana KnITwear corporaTion**

230 East Osage Street, P. O. Box 309, Greenfield, Indiana 46140
Telephone 317-462-4413 • Fax 317-462-0994

Established 1930



EXHIBIT

_B_

We look forward to our expanded production with Nova/Link. Please contact me if you have any questions.

Very truly yours,

INDIANA KNITWEAR CORPORATION

Don Weirich
Vice President of Manufacturing

cc:    Mr. Robert Taylor
        Mr. Roger Denisar
        Mr. Ralph Wilt



**InDIana KnITWear**

September 27, 2001

Nova/Link
Ave. Del Obrero #3 Fracc. Ind. Del Norte
H. Matamoros, Tamps
Mexico 87310

Attention: Mr. Jason Wolfe

Dear Jason:

Per our telephone conversation on September 26, 2001, we advised you of
our lack of sales/production for December of 2001 and January of 2002
due to the re-styling of the NFL replica line for 2002.

We have contacted all our major accounts to determine our
manufacturing opportunities for December and January. In addition, we
have reviewed our manufacturing situation with Reebok personnel.
Unfortunately, between lower current retail sales projections and
Reebok's design cycle, we do not foresee our manufacturing outlook
improving before February of 2002.

Therefore, per our agreement, we must give you a 60 calendar day notice
of our intent to discontinue all production at your plant. Our management
personnel will meet with you shortly to plan your production requirements
through 11/27/01.

We are devastated by our current production situation. We appreciate
your understanding of our current situation. We will work together to try
and find additional opportunities to extend our relationship.

Very truly yours,

INDIANA KNITWEAR CORPORATION

Don Weirich
Vice President, Manufacturing

/jt

InDIana KnITWear corporaTIon

230 East Osage Street, P. O. Box 309, Greenfield, Indiana 46140
Telephone 317-462-4413 • Fax 317-462-0994

Established 1930



EXHIBIT
C

November 7, 2001

Mr. Don Weirich
INDIANA KNITWEAR
230 East Osage St.
Greenfield, IN 46140
Fax: (317) 462-0994

Dear Don,

Obviously we are very disappointed and sorry to hear that the business from Reebok has not developed for INDIANA KNITWEAR. It has been a pleasure for NOVA/LINK to work with INDIANA KNITWEAR over the past years and it is with regret that we acknowledge your letter of October 2001 requesting the discontinuation of operations.

Despite the many efforts of keeping the lines together through your prospects and the ones that NOVA/LINK has referred to you, we see no other course than to terminate and indemnify the workforce. The total figure for the employees that are eligible for severance pay is $164,390.07. It is our understanding through Robert Taylor that the production will actually come to a halt during the first week of December of this year. NOVA/LINK would like to schedule a review of the accounts receivable status the last week of November to set forth a plan for the payment of all open invoices, the indemnification of the workforce, and the return of INDIANA KNITWEAR's equipment and inventory.

NOVA/LINK will remain a committed partner to any further manufacturing needs that may arise for INDIANA KNITWEAR.

Sincerely,

Jason Wolfe
NOVA/LINK

EXHIBIT
D

RUN DATE 07/19/02
RUN TIME 4:07 PM

NOVA/LINK AND SERVICIOS INDRU NOVA LINK,S.A.DE C.V

VS

INDIANA KNITWEAR CORPERATION

* * * C L E R K ' S   E N T R I E S * * * *

00137201
HON. SAMUEL S. GRIFFIN, III
1155 DAIRY ASHFORD, SUITE 300
HOUSTON, TEXAS    77079 0000

(06)

BREACH OF CONTR

04/22/02  ORIGINAL PETIT
04/22/02  CITATION: INDI
04/22/02  SERVED:

CER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| NOVA/LINK AND SERVICIOS | § | C.A. **B-02-148** |
| INDUSTRIALES NOVA LINK, | § | |
| S.A. de C.V. | § | |
| | § | |
| v. | § | |
| | § | Removed from the 404th |
| | § | Judicial District, |
| INDIANA KNITWEAR | § | Cameron County, Texas |
| CORPORATION | § | |

### INDEX OF MATTERS BEING FILED

| Date | Description |
|------|-------------|
| 04/22/02 | Plaintiffs' Original Petition |
| 06/05/02 | Related Federal Action |
| 07/19/02 | Docket Sheet |
| 08/29/02 | List of Counsel |

369941

EXHIBIT

tabbies

D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

NOVA/LINK AND SERVICIOS          §
INDUSTRIALES NOVA LINK,          §          C.A. **B-02-148**
S.A. de C.V.                     §
                                 §
v.                               §
                                 §          Removed from the 404th
                                 §          Judicial District,
INDIANA KNITWEAR                 §          Cameron County, Texas
CORPORATION                      §

### COUNSEL OF RECORD

**Counsel for Plaintiffs**

ATTORNEY IN CHARGE:
Samuel S. Griffin, III
Texas Bar No. 08473800
1155 Dairy Ashford, Suite 300
Houston, Texas
(281) 870-1124 - Telephone
(281) 870-1647 - Facsimile

OF COUNSEL:
W. Michael Taylor
Texas Bar No. 00789675
GRIFFIN & MATTHEWS
1155 Dairy Ashford, Suite 300
Houston, Texas
(281) 870-1124 - Telephone
(281) 870-1647 - Facsimile



EXHIBIT

*E*

**Counsel for Defendants**

ATTORNEY IN CHARGE:
Jack E. Urquhart
Texas Bar No. 20415600
Fed. I.D. No. 2082
1300 Post Oak Blvd., 24th Floor
Houston, Texas  77056
(713) 623-0887 - Telephone
(713) 960-1527 – Facsimile


OF COUNSEL:
BEIRNE, MAYNARD & PARSONS, L.L.P.
Martin D. Beirne
Texas Bar No. 02055000
Fed. I.D. No. 3120
Pamela C. Hicks
Texas Bar No. 24007002
Fed I.D. No.23061
1300 Post Oak Blvd., 24th Floor
Houston, Texas  77056
(713) 623-0887 – Telephone
(713) 960-1527 - Facsimile

William N. Berkowitz
Rheba Rutkowski
BINGHAM DANA LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

369916