3

United States District Court
Southern District of Texas
FILED

AUG 0 7 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| NOVA/LINK AND SERVICIOS | § | |
| INDUSTRIALES NOVA LINK, | § | |
| S.A. de C.V., | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. B-02-148 |
| v. | § | |
| | § | |
| INDIANA KNITWEAR | § | |
| CORPORATION, | § | |
| Defendant. | § | |

## ANSWER AND COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 8 and 80(c), defendant, Indiana Knitwear Corporation ("IKC"),

hereby answers the Complaint, paragraph by paragraph, in this removed action.

## I.

### Discovery Plan

1.     No response is required to Paragraph 1 of the Complaint, as it contains no allegations

against IKC.

## II.

### Parties, Jurisdiction, and Venue

2.     IKC lacks information or knowledge sufficient to admit or deny the allegations

contained in Paragraph 2 of the Complaint, and therefore denies the same, except that IKC admits,

upon information and belief, that Nova/Link holds itself out as a Cayman Islands partnership, and

that Nova/Link conducts business in Texas.



3.      IKC lacks information or knowledge sufficient to admit or deny the allegations contained in Paragraph 3 of the Complaint, and therefore denies the same.

4.      IKC admits that IKC is a corporation organized under the laws of Indiana and that prior to 2002, IKC engaged in business in Texas. Further answering, IKC states that the remaining allegations of Paragraph 4 of the Complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, except as admitted above, IKC denies the allegations contained in Paragraph 4 of the Complaint.

5.      IKC denies the allegations of Paragraph 5 of the Complaint.

6.      IKC admits that it entered into a contract with Nova/Link to be performed, in whole or in part, in Texas and denies that IKC breached the contract. Except as so admitted, IKC lacks information or knowledge sufficient to admit or deny the allegations contained in Paragraph 6 of the Complaint, and therefore denies the same.

### III.

### Factual Background

7.      IKC admits that it entered into a business relationship with Nova/Link in or about July 1998. Further answering, IKC states that the terms of parties' agreement ("Agreement") are memorialized in a confirmatory letter from IKC to Nova/Link (a true copy of which is attached hereto as *Exhibit A*), and that the Agreement speaks for itself. Except as so admitted, IKC denies the allegations contained in Paragraph 7 of the Complaint.

-2-

8.      IKC admits that IKC and Nova/Link agreed to expand production during 1999 and otherwise denies the allegations of Paragraph 8 of the Complaint.

9.      IKC admits that, on or about November 21, 2000, IKC gave Nova/Link sixty (60) days' notice of termination of the Agreement.  Except as so admitted, IKC denies the allegations of Paragraph 9 of the Complaint.

10.     IKC admits that business dealings between the parties continued into 2001 and that, on or about September 27, 2001, IKC gave Nova/Link another sixty (60) days' notice of termination of the Agreement.  Except as so admitted, IKC denies the allegations of Paragraph 10 of the Complaint.

## IV.

### Breach of Contract

11.     IKC admits that plaintiffs and/or their affiliates invoiced IKC for alleged severance payments due employees of plaintiffs and/or their affiliates.  Except as so admitted, IKC denies the allegations of Paragraph 11 of the Complaint.

12.     IKC denies the allegations of Paragraph 12 of the Complaint.

13.     IKC denies the allegations of Paragraph 13 of the Complaint.

## V.

### Damages

14.     IKC denies the allegations of Paragraph 14 of the Complaint.

LITDOCS:463859.1

## VI.

### Attorneys' Fees

15.    IKC denies the allegations of Paragraph 15 of the Complaint.

## VII.

### Prayer

16.    IKC denies that plaintiffs are entitled to the relief requested.

### SEPARATE AND AFFIRMATIVE DEFENSES

1.    Plaintiffs' complaint fails, in whole or in part, to state a claim upon which relief may be granted.

2.    Plaintiffs' claims are barred, in whole or in part, by plaintiffs' own breach of contract and unclean hands.

3.    Plaintiffs' claims are barred, in whole or in part, by the applicable statute of frauds.

4.    Plaintiffs' claims are barred, in whole or in part, by the applicable parol evidence rules.

**WHEREFORE,** IKC respectfully requests that this Court enter judgment on plaintiffs' Complaint as follows:

1.    that plaintiffs take nothing from IKC by the Complaint;

2.    that IKC be awarded its costs of suit herein, including attorneys' fees, to the full extent recoverable under applicable law;

3.    that judgment be entered in favor of IKC; and

4.    that IKC be awarded such other and further relief as this Court deems just and proper.

-4-

## COUNTERCLAIM

### Introduction

This is a diversity action for damages in connection with the conversion of over $100,000 worth of equipment owned by plaintiff-in-counterclaim, Indiana Knitwear Corporation ("IKC"), which IKC provided to the defendants-in-counterclaim, Nova/Link and Servicios Industriales Nova Link S.A. de C.V. (collectively, "Nova/Link"), solely for use in the manufacture of IKC's products. Although Nova/Link no longer manufactures IKC's products, and despite the fact that IKC indisputably owns and has the right to possess the equipment, Nova/Link now holds IKC's equipment hostage, intentionally and wrongfully dispossessing IKC of its equipment; converting IKC's equipment to its own use; impairing the condition and value of IKC's equipment; and refusing to relinquish control of IKC's equipment unless IKC pays a ransom.

### The Parties

1.      Plaintiff-in-counterclaim, Indiana Knitwear Corporation, is an Indiana corporation with a principal place of business at 230 East Osage Street, Greenfield, Indiana.

2.      Upon information and belief, defendant-in-counterclaim, Nova/Link, is a partnership under the laws of the Cayman Islands.  Nova/Link has a place of business at Avenida Del Obrero #3, Fraccionamiento Industrial Del Norte, H. Matamoros, Tamps., Mexico, and conducts business in Texas through a facility at 601 South Vermillion Road, Brownsville, Texas, 78521.  Upon

-5-

information and belief, Nova/Link is registered with the Texas Secretary of State as a domestic

business corporation, with a principal address at P.O. Box 2318, Brownsville, Texas 78522, and with

a registered agent and office at 600 Elca Lane, Suite B, Brownsville, Texas 78520.

3.      Upon information and belief, defendant-in-counterclaim, Servicios Industriales Nova

Link S.A. de C.V., is a mercantile corporation formed and existing under the laws of Mexico, with

an office in Cameron County, Texas.

4.      The defendants-in-counterclaim, collectively referred to as "Nova/Link," acted jointly

and in concert at all times relevant herein.

### Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332, as there exists complete diversity of citizenship between the parties and the amount in

controversy, exclusive of costs and interest, is well in excess of $75,000.

6.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a), as Nova/Link has

a usual place of business in this judicial district and is subject to personal jurisdiction in this judicial

district.

### Facts Common to all Counts

7.      IKC manufactures and sells apparel to retailers and others.

8.     Nova/Link provides "maquiladora" manufacturing services in Mexico, an arrangement developed with the introduction of the Free Trade Zone established between Mexico and the United States.

9.     In a maquiladora manufacturing relationship, a United States manufacturer provides equipment and raw materials to the maquiladora facility in Mexico, and the maquiladora provides the necessary labor and services required to produce a finished product, which is then shipped back to the United States.   In such a relationship, the United States manufacturer does not enter an employment relationship with the laborers whose services are provided by the maquiladora.   As advertised by Nova/Link on its website:

> [W]e have perfected the format in which our clients can relocate into Mexico and pay for our services throughout and [*sic*] hourly rate.  Under this format the client provides the machinery, raw materials, and expertise necessary to manufacture the product. NOVA/LINK in turn brings all of the aspects of Mexico to the program. We provide the transportation between Brownsville, TX and our Mexican facilities on our private truck fleet, the Mexican brokering services, full management and engineering staff, and all of the legal and permitting functions for the execution of the manufacturing operations.
>
> This format allows us to set up a specially designed production layout to meet our clients' needs.  Together we implement the program and effectively train our

-7-

staff and operators so the production can then be left to NOVA/LINK. It's having

your "own" manufacturing division in Mexico.

To complete the service and allow for direct distribution from Brownsville,

Texas, we have a full distribution center for services ranging from cross docking to

unit pick and pack fulfillment.

10.    In or about July 1998, IKC and Nova/Link agreed to commence operation of a

maquiladora sewing line in Mexico. The terms of the parties' agreement ("Agreement") are

memorialized in a confirmatory letter from IKC to Nova/Link, a true copy of which is attached

hereto as *Exhibit A*, and included the following:

- Nova/Link's pricing to IKC would include freight to and from Nova/Link's Brownsville, Texas warehouse.

- IKC would provide to Nova/Link, but would retain ownership of, all equipment, fabric and labeling components, thread and packaging material required for the manufacture of IKC's products.

- IKC would pay all United States customs service fees and the cost of temporary warehousing in Nova/Link's Brownsville warehouse.

- IKC would "not be responsible for any expenses not listed above without prior authorization."

-8-

- Nova/Link would be "responsible for all Mexican requirements."

11. Following the parties' entry into this Agreement, IKC provided Nova/Link with over $100,000 worth of IKC's own equipment, required for the manufacture of IKC's products, while retaining title to and ownership of the equipment (hereinafter, the "IKC Equipment"). IKC provided the IKC Equipment to Nova/Link solely for use in the manufacture of IKC's products, with the reasonable understanding that Nova/Link would (i) use the IKC Equipment solely for the purpose of manufacturing IKC's products; (ii) exercise reasonable care in the custody, use, and maintenance of the IKC Equipment; and (iii) return the IKC Equipment to IKC in good condition upon termination of the Agreement and maquiladora relationship between the parties. Nova/Link accepted the IKC Equipment for this purpose and with the same understanding.

12. In or about January 1999, IKC and Nova/Link agreed to expand production, which expansion would require two additional sewing lines. The additional terms of the agreement between the parties were memorialized in a letter dated January 28, 1999. The additional terms included an agreement that each party would provide the other with 60-days' notice of termination of the Agreement. The January 28, 1999 letter also reaffirmed that Nova/Link would be "responsible for all Mexican requirements." A true copy of the January 28, 1999 letter is attached hereto as **Exhibit B**.

13. On or about September 27, 2001, IKC gave Nova/Link 60-days' notice of IKC's intent to terminate production due to the bankruptcy of IKC's largest customer and a decline in the sales

upon which IKC's production requirements with Nova/Link were based.  A true copy of the September 27, 2001 letter is attached hereto as *Exhibit C*.

14. On or about November 7, 2001, IKC received a communication from Nova/Link, claiming that IKC was responsible for employee "severance pay" in an amount exceeding $160,000.00, notwithstanding that Nova/Link was and is responsible for all Mexican requirements, including labor costs.  A true copy of the November 7, 2001 letter is attached hereto as *Exhibit D*.

15. Since giving notice of termination of the Agreement, IKC has asked Nova/Link numerous times to return the IKC Equipment.  Nova/Link has admitted that it has possession of the IKC Equipment but has wrongfully refused to return the IKC Equipment and wrongfully demanded that IKC make an "indemnity" payment to Nova/Link to cover "severance pay" for Nova/Link's employees.

16. Under the Agreement and consistent with the maquiladora relationship, Nova/Link was and is responsible for all "Mexican requirements," including labor costs.  Nova/Link also was responsible for returning the IKC Equipment to IKC in good condition upon termination of the Agreement and maquiladora relationship between the parties.

17. No "severance" or "indemnity" payment from IKC to Nova/Link is required or contemplated by the Agreement or any modification thereto; nor is IKC required to pay Nova/Link any money in connection with the return of the IKC Equipment to IKC.

-10-

18. IKC has never agreed to pay any labor costs or to make any "severance" or "indemnity" payment to Nova/Link. IKC does not otherwise owe Nova/Link any money.

19. IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time. IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to retain possession of the IKC Equipment for any reason. Nova/Link is aware of these facts, yet has refused to return the IKC Equipment to IKC, in reckless disregard of IKC's rights.

20. Nova/Link has intentionally, wrongfully, and maliciously dispossessed IKC of the IKC Equipment since November 2001, and has acted in reckless disregard of IKC's rights.

21. Nova/Link has intentionally, wrongfully, and maliciously exercised dominion and control over the IKC Equipment since November 2001 and has acted in reckless disregard of IKC's rights.

## Count I

## (Conversion)

22. The allegations contained in paragraphs 1-21 are incorporated by reference as though fully set forth herein.

23. IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time. IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to retain possession of the IKC Equipment for any reason. Nova/Link is aware of these facts and has acted in reckless disregard of IKC's rights.

-11-

24. Since the Agreement and maquiladora relationship between the parties has been terminated, Nova/Link has a duty to return the IKC Equipment to IKC, yet Nova/Link has failed and refused to do so. Instead, Nova/Link has breached its duty to return the IKC Equipment to IKC, intentionally, wrongfully, and maliciously exercising dominion and control over the IKC Equipment since November 2001, and imposing unreasonable and unwarranted conditions on the return of the IKC Equipment, such as demanding money from IKC that IKC does not owe to Nova/Link.

25. Nova/Link has intentionally, wrongfully, and maliciously exercised dominion and control over the IKC Equipment for the purpose of appropriating the IKC Equipment for itself, in reckless disregard of IKC's rights.

26. Nova/Link has intentionally, wrongfully, and maliciously exercised dominion and control over the IKC Equipment for the purpose of depriving IKC of the IKC Equipment, in reckless disregard of IKC's rights.

27. Nova/Link has intentionally, wrongfully, and maliciously exercised dominion and control over the IKC Equipment for the purpose of extorting money from IKC, in reckless disregard of IKC's rights.

28. As a result of Nova/Link's conduct in maliciously failing and refusing to return the IKC Equipment in reckless disregard of IKC's rights, as described above, IKC has suffered and will suffer damages in an amount to be proven at trial and also is entitled to exemplary damages and return of the IKC Equipment.

## Count II

### (Trespass to Chattels)

29. The allegations contained in paragraphs 1-28 are incorporated by reference as though fully set forth herein.

30. IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time. IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to retain possession of the IKC Equipment for any reason. Nova/Link is aware of these facts and has acted in reckless disregard of IKC's rights.

31. Since the Agreement and maquiladora relationship between the parties has been terminated, Nova/Link has a duty to return the IKC Equipment to IKC, yet Nova/Link has failed and refused to do so. Instead, Nova/Link has breached its duty to return the IKC Equipment to IKC, intentionally, wrongfully, and maliciously dispossessing IKC of the IKC Equipment, in reckless disregard of IKC's rights.

32. Nova/Link has intentionally, wrongfully, and maliciously deprived IKC of the use and value of the IKC Equipment for a substantial time, in reckless disregard of IKC's rights.

33. Upon information and belief, Nova/Link has intentionally, wrongfully, and maliciously impaired the condition, quality, or value of the IKC Equipment, in reckless disregard of IKC's rights.

34. As a result of Nova/Link's conduct in intentionally, wrongfully, and maliciously dispossessing IKC of the IKC Equipment in reckless disregard of IKC's rights, as described above,

IKC has suffered and will suffer damages in an amount to be proven at trial and also is entitled to exemplary damages and return of the IKC Equipment.

### Count III

### (Violation of Bailment)

35. The allegations contained in paragraphs 1-34 are incorporated by reference as though fully set forth herein.

36. Following the parties' entry into the Agreement, IKC provided Nova/Link with the IKC Equipment while retaining title to and ownership of the IKC Equipment. Pursuant to the Agreement, IKC provided Nova/Link with the IKC Equipment solely for use in the manufacture of IKC's products, with the reasonable understanding that Nova/Link would (i) use the IKC Equipment solely for the purpose of manufacturing IKC's products; (ii) exercise reasonable care in the custody, use, and maintenance of the IKC Equipment; and (iii) return the IKC Equipment to IKC in good condition upon termination of the Agreement and maquiladora relationship between the parties. Nova/Link accepted the IKC Equipment for this purpose and with the same understanding, creating a bailment.

37. IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time; nor is IKC required by the Agreement to pay Nova/Link any money in connection with the return of the IKC Equipment. IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to retain

-14-

possession of the IKC Equipment for any reason. Nova/Link is aware of these facts and has acted in reckless disregard of IKC's rights.

38. Since the Agreement and maquiladora relationship between the parties has been terminated, Nova/Link has a duty to return the IKC Equipment to IKC. IKC has directed Nova/Link to return the IKC Equipment on numerous occasions, yet Nova/Link has failed and refused to do so. Instead, Nova/Link has breached its duty to return the IKC Equipment to IKC, intentionally, wrongfully, and maliciously dispossessing IKC of the IKC Equipment and violating its duty under the bailment, in reckless disregard of IKC's rights.

39. Upon information and belief, Nova/Link has failed to exercise reasonable care in the custody, use, and maintenance of the IKC Equipment and has impaired the condition, quality, or value of the IKC Equipment in violation of its duty under the bailment.

40. As a result of Nova/Link's conduct in failing and refusing to return the IKC Equipment to IKC and in failing to exercise reasonable care in the custody, use, and maintenance of the IKC Equipment, as described above, IKC has suffered and will suffer damages in an amount to be proven at trial and also is entitled to return of the IKC Equipment.

## Count IV

### (Breach of Contract)

41. The allegations contained in paragraphs 1-40 are incorporated by reference as though fully set forth herein.

42. IKC has fully or substantially performed all of its obligations under the Agreement.

43. Nova/Link has breached the Agreement by wrongfully and maliciously refusing to return the IKC Equipment to IKC upon termination of the Agreement and by wrongfully and maliciously demanding payment for costs for which Nova/Link was and is responsible under the Agreement and pursuant to the maquiladora relationship.

44. As a result of Nova/Link's conduct, as described above, IKC has suffered and will suffer damages in an amount to be proven at trial and also is entitled to attorneys' fees.

### Count V

### (Restitution/Unjust Enrichment)

45. The allegations contained in paragraphs 1-44 are incorporated by reference as though fully set forth herein.

46. IKC provided the IKC Equipment, worth over $100,000, to Nova/Link solely for use by Nova/Link's maquiladora facility in the manufacture of IKC's products.

47. IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time. As the Agreement and maquiladora relationship between the parties has been terminated, IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to retain possession of the IKC Equipment for any reason. Nova/Link is aware of these facts and has acted in reckless disregard of IKC's rights.

-16-

48. Nova/Link has a duty to return the IKC Equipment to IKC, yet Nova/Link has failed and refused to do so, in reckless disregard of IKC's rights.

49. IKC had a reasonable expectation that Nova/Link would meet its obligation to return the IKC Equipment to IKC upon termination of the Agreement and maquiladora relationship between the parties.

50. Despite IKC's repeated demands for the return of the IKC Equipment, and despite Nova/Link's knowledge that IKC owns the IKC Equipment and is entitled to immediate possession of the IKC Equipment, Nova/Link has failed and refused to return the IKC Equipment to IKC, thereby unjustly enriching itself to the harm and detriment of IKC.

51. As a result of Nova/Link's conduct, as described above, Nova/Link is liable to IKC in an amount to be proven at trial and also is entitled to return of the IKC Equipment.

## Count VI

## (Declaratory Judgment)

52. The allegations contained in paragraphs 1-51 are incorporated by reference as though fully set forth herein.

53. Under the Agreement and consistent with the maquiladora relationship, Nova/Link was and is responsible for all "Mexican requirements," including labor costs.

-17-

54. No severance or "indemnity" payment from IKC to Nova/Link is required or contemplated by the Agreement or any modification thereto; nor does the Agreement require IKC to pay Nova/Link any money in connection with the return of the IKC Equipment.

55. IKC has never agreed to pay any labor costs or to make any "severance" or "indemnity" payment to Nova/Link; nor does IKC otherwise owe Nova/Link any money.

56. IKC owns the IKC Equipment and has not relinquished its title to or ownership rights in the IKC Equipment to Nova/Link at any time.  IKC is entitled to immediate possession of the IKC Equipment, without more, and Nova/Link is not entitled to retain possession of the IKC Equipment for any reason.  Nova/Link is aware of these facts, yet has refused to return the IKC Equipment to IKC.

57. Since giving notice of termination of the Agreement, IKC has asked Nova/Link numerous times to return the IKC Equipment.  Nova/Link has admitted that it has possession of the IKC Equipment but has wrongfully refused to return the IKC Equipment and wrongfully demanded that IKC make an "indemnity" payment to Nova/Link to cover "severance pay" for Nova/Link's employees.

58. As alleged above, an actual controversy exists between IKC and Nova/Link concerning whether IKC is entitled to immediate possession of the IKC Equipment, without having to pay Nova/Link a ransom for its release, and whether IKC owes Nova/Link money.

59. Pursuant to 28 U.S.C. § 2201 and applicable state law, IKC is entitled to a declaratory judgment by this Court as to the rights and obligations of the parties in this matter. Specifically, IKC is entitled to a declaratory judgment that IKC is entitled to immediate possession of the IKC Equipment, without having to pay Nova/Link money for its release, and that IKC otherwise does not owe Nova/Link any money. Plaintiff is also entitled to further relief as may be warranted under 28 U.S.C. § 2202.

**WHEREFORE**, plaintiff-in-counterclaim, Indiana Knitwear Corporation, prays that the Court:

(i) enter judgment in favor of plaintiff-in-counterclaim on all counts of the Counterclaim;

(ii) enter an order declaring that plaintiff-in-counterclaim is entitled to immediate possession of the IKC Equipment and that plaintiff-in-counterclaim owes nothing to defendants-in-counterclaim, and awarding plaintiff-in-counterclaim the return of the IKC Equipment and such other relief as is warranted under 28 U.S.C. § 2202;

(iii) award plaintiff-in-counterclaim damages in an amount to be proven at trial, together with interest, costs, and attorneys' fees, in the full amount recoverable under the applicable law; and

(iv) award plaintiff-in-counterclaim any such further relief, at law or equity, that the Court deems just and proper.

-19-

INDIANA KNITWEAR CORP.,

By its attorneys,

By: _____
      James H. Hunter, Jr.
      Texas State Bar No. 00784311
      Federal ID No. 15703
      Keith N. Uhles
      Texas State Bar No. 20371100
      Fed. I.D. No. 1936
      Royston, Rayzor, Vickery & Williams
      P.O. Box 3509
      Brownsville, Texas 78521
      (956) 542-4377 (Telephone)
      (956) 542-4370 (Facsimile)
      **ATTORNEY IN CHARGE FOR**
      **INDIANA KNITWEAR CORPORATION**

**OF COUNSEL:**

William N. Berkowitz
Rheba Rutkowski
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

## CERTIFICATE OF SERVICE

I certify that a copy of the above pleading was served on all counsel of record on August 7, 2002, as follows: W. Michael Taylor, Esq., Griffin & Matthews, 1155 Dairy Ashford, Suite 300, Houston, Texas 77079

_____
**James H. Hunter, Jr.**

-20-



**INDIANA KNITWEAR**

July 10, 1998
*REVISED*

Nova/Link
Ave. Del Obrero #3
Fracc. Ind. Del Norte
H. Matamoros, Tamps
Mexico 87310

Attention:    Mr. Jason Wolfe
              FAX #011-52-88-10-1083

Dear Mr. Wolfe:

We have confirmed your pricing on style LA790 as follows:

        $14.50 per dozen for the first 3000 dozen
        $10.50 per dozen after the initial 3000 dozen

Your pricing includes freight to and from Brownsville, all Mexican customs services, sewing and final quality control auditing. Nova/Link is responsible for all Mexican requirements.

Indiana Knitwear will provide all sewing machines and folders required to sew our production, all fabric/labeling components for the sewing of our product including sewing thread and all packaging materials. Indiana Knitwear will pay all the U.S. customs services fees and temporary warehousing in Brownsville. Indiana Knitwear retains ownership of all fabric, components and equipment during our business arrangement. Indiana Knitwear Corporation will not be responsible for any expenses not listed above without prior authorization.

We have authorized your use of the following Indiana Knitwear equipment during the term of our agreement:

| BRAND | MODEL# | SERIAL# | MOTOR | SERIAL# |
|-------|--------|---------|-------|---------|
| Merrow * | M-3DW-2 | 139746 | Union Special | 498843 |
| Merrow * | M-3DW-2 | 139633 | AMCO | 74778 |
| Merrow * | M-3DW | 113623 | AMCO | 37206 |
| Merrow * | M-3DW | 124186 | AMCO | 407673 |
| Merrow * | MG-3DW-2 | 227508 | AMCO | 251343 |
| Merrow | MG-3DW-2 | 218812 | AMCO | 93648 |
| Merrow | MG-3DW-2 | 210185 | AMCO | 250985 |
| Merrow | M-2DH-1 | 169026 | AMCO | 938133-189 |
| Merrow | MG-3DW-2 | 227493 | AMCO | 93600 |
| Merrow | MG-2DH-1 | 205767 | AMCO | 73881-351 |
| Merrow | MG-2DH-1 | 211460 | AMCO | 407675 |

**INDIANA KNITWEAR CORPORATION**

Nova/Link          230 East Osage Street, P. O. Box 309, Greenfield, Indiana 46140          Page 1 of 2
07/10/98                   Telephone 317-462-4413 • Fax 317-462-0994

Established 1930



EXHIBIT

A

| BRAND | MODEL# | SERIAL# | MOTOR | SERIAL# |
|-------|--------|---------|-------|---------|
| Juki | DDL-555-2 | C25382 | Unistop | 301134 |
| Juki | DDL-555-2 | R6478 | AMCO | 12351 |
| Juki | DDL-552-2 | CF6722 | Quick Rotan | 4215210 |
| Pegasus | W562-02BB | 3424688 | Consew | 6C4-0141 |
| Pegasus | W562-02BB | 3424690 | Consew | 73U-0140 |
| Pegasus | W664-08AC | 6840062 | EFKA | 12143685 |
| Pegasus | W664-08AC | 6834948 | EFKA | 12133972 |

We will include two binding folders, two hemming guides and the required coverstitch guides for the above listed equipment. In addition the Merrows highlighted by an asterisk will include air setups.

We are also forwarding to you one Hotronix Thermal Transfer Press (Serial #1478 and Model #X5H) for the fusing operation. Eighteen Work Space International sewing chairs will be included in the shipment.

We have scheduled your Plant to finish the following by weekending date:

| W/E | DOZENS | W/E | DOZENS |
|------|--------|------|--------|
| 8-21 | 200 | 10-02 | 450 |
| 8-28 | 300 | 10-07 | 450 |
| 9-04 | 350 | 10-16 | 500 |
| 9-11 | 350 | 10-23 | 500 |
| 9-18 | 400 | 10-30 | 500 |
| 9-25 | 400 | | |

Please advise if this buildup is satisfactory. The first cut goods will be delivered to Brownsville on 7-23-98. We have scheduled training for the week of July 27, 1998. Your personnel are welcome at Willacy Apparel for any training prior to 7-27-98.

We look forward to working with your organization. Please advise if you need any additional information.

Very truly yours,

INDIANA KNITWEAR CORPORATION

*Don Weirich /ao*

Don Weirich
Vice President, Manufacturing

cc:    Mr. Roger Denisar
       Mr. Robert Taylor
       Mr. Ralph Wilt

Nova/Link
07/10/98

# INDIANA KNITWEAR

January 28, 1999

Nova/Link
Ave. Del Obrero #3
Fracc. Ind. Del Norte
H. Matamoros, Tamps
Mexico 87310

Attention:     Mr. Jason Wolfe
               FAX #011-52-88-10-1083

Dear Jason:

We have confirmed your pricing on style P701 at $11.73 per dozen.  Your price includes freight to and from Brownsville, all Mexican customs services, sewing and final quality auditing.  Nova/Link is responsible for all Mexican requirements.

Per our conversation, we have revised my letter dated 12-9-98 to expand our production in 1999 to 2,500 dozen per week.  We confirmed that Nova/Link will comply with our quality control system as required by our accounts.

The following areas need to be clarified as we expand our business relationship:

1.  Indiana Knitwear Corporation and Nova/Link understand that this arrangement will run through September 30, 1999.  Naturally, we both want the relationship to continue beyond 9-30-99.

2.  We both agree to give the other party a sixty-day notice of termination of our verbal agreement if business situations warrant.

3.  Indiana Knitwear will furnish one case of silicone spray with each shipment involving screen print sleeves to assist Nova/Link.

4.  Indiana Knitwear will furnish the cleaning equipment and cleaning fluid required to clean our garments.

5.  Nova/Link will be responsible for purchasing all machine parts including needles.

6.  Nova/Link will be responsible for providing the box tape and strapping to properly seal our cartons or unipack containers.

**INDIANA KNITWEAR CORPORATION**

230 East Osage Street. P. O. Box 309. Greenfield, Indiana 46140
Telephone 317-462-4413 • Fax 317-462-0994

Established 1930



EXHIBIT
B

We look forward to our expanded production with Nova/Link. Please contact me if you have any questions.

Very truly yours,

INDIANA KNITWEAR CORPORATION

Don Weirich
Vice President of Manufacturing

cc:     Mr. Robert Taylor
        Mr. Roger Denisar
        Mr. Ralph Wilt

# INDIANA KNITWEAR

September 27, 2001

**Nova/Link**
**Ave. Del Obrero #3 Fracc. Ind. Del Norte**
**H. Matamoros, Tamps**
**Mexico 87310**

**Attention: Mr. Jason Wolfe**

**Dear Jason:**

Per our telephone conversation on September 26, 2001, we advised you of our lack of sales/production for December of 2001 and January of 2002 due to the re-styling of the NFL replica line for 2002.

We have contacted all our major accounts to determine our manufacturing opportunities for December and January. In addition, we have reviewed our manufacturing situation with Reebok personnel. Unfortunately, between lower current retail sales projections and Reebok's design cycle, we do not foresee our manufacturing outlook improving before February of 2002.

Therefore, per our agreement, we must give you a 60 calendar day notice of our intent to discontinue all production at your plant. Our management personnel will meet with you shortly to plan your production requirements through 11/27/01.

We are devastated by our current production situation. We appreciate your understanding of our current situation. We will work together to try and find additional opportunities to extend our relationship.

Very truly yours,

INDIANA KNITWEAR CORPORATION

Don Weirich
Vice President, Manufacturing

/jt

indiana knitwear corporation

230 East Osage Street, P. O. Box 309, Greenfield, Indiana 46140
Telephone 317-462-4413 • Fax 317-462-0994

Established 1930



EXHIBIT
C

November 7, 2001

Mr. Don Weirich
INDIANA KNITWEAR
230 East Osage St.
Greenfield, IN 46140
Fax: (317) 462-0994

Dear Don,

Obviously we are very disappointed and sorry to hear that the business from Reebok has not developed for INDIANA KNITWEAR. It has been a pleasure for NOVA/LINK to work with INDIANA KNITWEAR over the past years and it is with regret that we acknowledge your letter of October 2001 requesting the discontinuation of operations.

Despite the many efforts of keeping the lines together through your prospects and the ones that NOVA/LINK has referred to you, we see no other course than to terminate and indemnify the workforce. The total figure for the employees that are eligible for severance pay is $164,390.07. It is our understanding through Robert Taylor that the production will actually come to a halt during the first week of December of this year. NOVA/LINK would like to schedule a review of the accounts receivable status the last week of November to set forth a plan for the payment of all open invoices, the indemnification of the workforce, and the return of INDIANA KNITWEAR's equipment and inventory.

NOVA/LINK will remain a committed partner to any further manufacturing needs that may arise for INDIANA KNITWEAR.

Sincerely,

Jason Wolfe
NOVA/LINK



**EXHIBIT**

D